RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 7 / 14 / 06
BY ＿＿

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 04-1549 |
| | CRIMINAL NO. 00-50050-01 |
| VERSUS | JUDGE DONALD E. WALTER |
| BUTCH WILSON, a.k.a. Calvin Odom | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 [Doc. #491] filed on behalf of defendant, Butch Wilson, a.k.a. Calvin Odom. The Government opposes this motion. For the reasons assigned herein, Wilson's motion is **DENIED** and **DISMISSED WITH PREJUDICE**.

## STATEMENT OF THE CASE

On June 29, 2000, a federal grand jury returned a four-count indictment against defendant, Butch Wilson, a.k.a. Calvin Odom ("Odom"), James McDade, Andre Osborne, Wayne Kelly, Rochelle Abercrombie, Allison Cooper, Angela Rudolph, Lolita Gloster, Vanessa Wilkins and Scottrell Morris. Count One charged defendants with conspiracy to possess with intent to distribute 50 grams or more of cocaine base and five kilograms or more of cocaine hydrocholride, in violation of 21 U.S.C. §§ 841(a) and 846. Count Two charged defendants with a forfeiture count. Count Three charged defendants with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i). Count Four charged defendants with a forfeiture count related to the money laundering charge.

On March 8, 2002, following a jury trial, Odom was convicted on Counts One and Three.[1] On July 11, 2002, Odom was sentenced to life in prison. The United States Court of Appeals for the Fifth Circuit affirmed Odom's conviction on December 22, 2003. United States v. Wilson, 355 F.3d 358 (5th Cir. 2003). The judgment was issued as mandate on January 13, 2004.

On July 24, 2004, Odom filed this §2255 motion asserting that he was sentenced in violation of the law. Odom further asserts claims of ineffective assistance of trial and appellate counsel.

For the sake of efficiency, this Court adopts the facts as stated by the Fifth Circuit in Wilson, 355 F.3d at 360.

## LAW AND ANALYSIS

Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). A defendant "may not raise an issue [constitutional or jurisdictional in nature] for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994), citing United States v. Shaid, 937 F.2d 228, 232 (5th Cir.1991) (en banc) (citation omitted), cert. denied, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992)). If the error is not of constitutional or jurisdictional magnitude, the defendant must show the error would result in a complete miscarriage of justice. Id.

Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in §2255 motions. Williamson, 183 F.3d at 462. Accordingly, to the extent Odom

---

[1] By agreement of counsel, the Court decided the issue of forfeiture in Counts Two and Four.

2

asserts claims regarding this Court's application of the Sentencing Guidelines, those claims are not cognizable under §2255. Odom should have raised these arguments on direct appeal. However, Odom's claims that defense counsel allegedly failed to raise these arguments at sentencing and on appeal, although lacking in merit as discussed below, are at least cognizable

Odom's claims of ineffective assistance of counsel at trial, sentencing and on appeal are the only cognizable claims on this §2255 motion. In particular, Odom asserts that his trial counsel rendered ineffective assistance by failing to object to the admission of improper evidence on the correct legal grounds. Odom also asserts that, at sentencing, defense counsel failed to raise an argument under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), with regard to the drug amounts upon which his sentence was based.

Finally, Odom asserts that his appellate counsel was ineffective for failing to raise the following issues on appeal: (1) that this Court erred in denying defendant's motion for acquittal based on insufficient evidence; (2) that in violation of Apprendi, supra, the drug amounts upon which his sentence was based were not submitted to a jury; (3) that the Court arrived at the amount of drugs attributable to Odom for purposes of sentencing in an erroneous or improper manner; and (4) that the application of the firearm and leadership enhancements under U.S.S.G. §§2D1.1(b)(1) and 3B1.1, respectively, was improper. Each ineffective assistance claim will be addressed in turn.

### A. Ineffective Assistance of Trial Counsel - Admission of Evidence of Physical Abuse.

Petitioner bears the burden of proving two components, deficient performance and prejudice, to establish ineffective assistance of counsel. Counsel's performance was deficient only if he made errors so serious that, when reviewed under an objective standard of reasonable professional

3

assistance and afforded a presumption of competency, he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Prejudice exists only if there is a reasonable probability that, but for the error, the result of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. 104 S.Ct. at 2068.

Odom asserts that although his trial counsel objected to the admission of evidence of Odom's abusive and violent conduct toward women under Federal Rules of Evidence 401 and 403,[2] arguing that such evidence was irrelevant and prejudicial, counsel should have objected to the evidence of abuse under Fed. R. Evid. 404(b). According to Odom, the Government put forth evidence of his abuse of women to show his character, not to prove acts in furtherance of the conspiracy. The Government asserts that evidence of Odom's abuse of women was admissible regardless of the basis of defendant's objection. Thus, even if Odom's trial counsel erroneously relied upon Federal Rules of Evidence 401 and 403, Odom cannot prove prejudice resulted from such an error.

As the Government correctly notes, the Fifth Circuit determined that under a 401/403 analysis, this Court did not abuse its discretion when it held that the probative value of the testimony was not substantially outweighed by its danger of unfair prejudice. The Wilson Court stated that:

> [A]lthough the physical abuse testimony introduced the risk that a juror could have convicted Odom based on his behavior toward the women, it also suggested the women were motivated by fear of Odom. Thus, the testimony made a central issue, whether the women acted at Odom's behest when they picked up the money, more likely. The district court has broad discretion to weigh the relevance, probative value and prejudicial effect of the evidence. United States v. Bermea, 30 F.3d 1539, 1562

---

[2]"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

4

(5th Cir.1994). This evidence substantiated a central issue in the case and accordingly the district court did not abuse that discretion when it held the probative value of the testimony was not substantially outweighed by its danger of unfair prejudice.

Wilson, 355 F.3d at 361.

Rule 404(b) prohibits the admission of evidence of other crimes, wrongs or acts to prove the character of a person to show the person acted in conformity therewith. See Fed. R. Evid. 404(b). However, admission of other acts evidence is permissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Id.

To determine whether evidence of other acts is admissible, the Court must first determine whether the evidence sought to be admitted is intrinsic or extrinsic since Rule 404(b) does not prohibit intrinsic evidence. See United States v. Yi L, — F.3d —, 2006 WL 1523083, *4 (5th Cir. 2006). Evidence of acts other than conduct related to the offense is intrinsic when the evidence of the other act and the evidence of the crime charged are "inextricably intertwined" or both acts are part of a "single criminal episode" or the other acts were "necessary preliminaries" to the crime charged. Id. at *5. As the Fifth Circuit has stated, intrinsic evidence is admissible "to complete the story of the crime by proving the immediate context of events in time and place." United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996).

This Court finds that evidence of Odom's abuse of the women who retrieved money from various Western Union locations was inextricably intertwined with evidence supporting both the drug conspiracy and money laundering conspiracy charges against Odom, and was, thus, "intrinsic." As noted by the Fifth Circuit, evidence of Odom's abuse "suggested the women were motivated by fear of Odom" and made the issue of whether those women acted at Odom's behest "more likely."

5

Wilson, 355 F.3d at 361. With intrinsic evidence, Rule 404(b) does not apply and the other acts evidence is admissible.

As the evidence of Odom's abuse of women would have been admissible regardless of the basis of trial counsel's objection, there can be no finding of prejudice. Without prejudice, Odom's claim of ineffective assistance of trial counsel must fail.

B.  **Ineffective Assistance of Counsel at Sentencing and on Appeal - Application of Apprendi and Blakely.**

The entitlement to effective assistance of counsel extends to one's first appeal of right. Evitts v. Lucey, 469 U.S. 387, 396-97, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985); United States v. Phillips, 210 F.3d 345, 348 (5th Cir. 2000); United States v. Williamson, 183 F.3d 458, 462. The Court judges counsel's appellate performance under the same two-prong test of Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, applicable to trial performance. Philips, 210 F.3d at 348; Williamson, 183 F.3d at 462. As explained above, to succeed on his motion, Odom must establish that (1) his attorney's representation was deficient, and (2) the deficient performance caused him prejudice. Id.

Counsel is not deficient for not raising every non-frivolous issue on appeal. See Phillips, 210 F.3d at 348; see also Williamson, 183 F.3d at 462. Instead, to be deficient, the decision not to raise an issue must fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. at 2064. The reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." Phillips, 210 F.3d at 348, quoting Williamson, 183 F.3d at 462.

Odom asserts that at sentencing and on appeal defense counsel failed to raise arguments based upon Apprendi, supra. In Apprendi, supra, the United States Supreme Court held that "[o]ther

6

than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362-63. In particular, Odom asserts that his sentence of life imprisonment exceeded the statutory maximum penalty of twenty years and was issued based upon drug amounts and types not submitted to the jury. Odom is incorrect on both assertions.

Count One of the indictment provided, in pertinent part, that:

> Beginning on or about October 31, 1993 and continuing through September 30, 1997, in the Western District of Louisiana and elsewhere, BUTCH WILSON a/k/a CALVIN ODOM . . . did knowingly and intentionally conspire and agree together and with other persons known and unknown to the grand jury, to possess with intent to distribute and aid and abet the possession with intent to distribute **fifty (50) grams or more of cocaine base (crack cocaine), and five (5) kilograms or more of cocaine hydrochloride (powder cocaine)**, Schedule II controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846. [21 U.S.C. § 841(a)(1) 21 U.S.C. § 846].

Emphasis added. As to Count One of the indictment, this Court instructed the jury as follows:

> Count 1 of the indictment accuses the Defendant of committing the crime of conspiracy to posses with intent to distribute cocaine in two different ways. The first is that the Defendant conspired to possess with intent to distribute **50 grams or more of cocaine base, crack cocaine**. The second is that the Defendant conspired to posses with intent to distribute **5 kilograms or more of cocaine hydrochloride, powder cocaine**. The Government doesn't have to prove both of these in order for you to return a guilty verdict on this charge. **Proof beyond a reasonable doubt on one or the other is enough. But in order to return a guilty verdict, all twelve of you must agree that the same one has been proven**. All of you must agree that the Government has proved beyond a reasonable doubt that the Defendant conspired to possess with intent to distribute 50 grams or more of cocaine base, crack cocaine, or you must all - or you must agree that the Government has proven beyond a reasonable doubt that the Defendant conspired to possess with intent to distribute 5 kilograms or more of cocaine hydrochloride, powder cocaine.

Jury Instructions, pp. 6-7 (emphasis added).

In <u>United States v. Slaughter</u>, 238 F.3d 580, 583 (5th Cir. 2000), the Fifth Circuit addressed,

7

inter alia, the issue of whether a defendant's conviction must be reversed because the jury was not required to find the quantity of drugs as an element of each of the charged offenses. The Fifth Circuit noted that each of the counts on which the defendant was convicted contained an express allegation of the type and quantity of controlled substance involved, the particular schedule in which that substance appears in 21 U.S.C. § 812, and a reference to both 21 U.S.C. § 841(a) and the particular subparagraph of §841(b)(1) in which the punishment for the quantity involved is stated. When instructing the jury as to Count One (the conspiracy count), the district court in Slaughter stated that the government had to prove beyond a reasonable doubt that the defendants "reached an agreement to conspire to distribute and possess with intent to distribute 50 grams or more of a mixture and substance containing a detectable amount of cocaine base (crack cocaine), a schedule 2 controlled substance." Id. at 583. The Slaughter Court found that based on this instruction and the detail in the indictment, the jury's finding of guilty on Count One "necessarily include[d] a finding as to the quantity and type of controlled substance involved in the conspiracy agreement." Id.

The verdict form in the case sub judice required jurors to determine whether defendant Calvin Odom was guilty or not guilty as to Counts One and Three. As a matter of practice, this Court sends copies of both the indictment and the jury instructions with the jury for use during deliberations. All twelve jurors found Calvin Odom guilty of Counts One and Three. Based on the indictment, this Court's instructions and the verdict form, it is clear that the jury found beyond a reasonable doubt that Calvin Odom conspired to possess with the intent to distribute either "50 grams or more of cocaine base, crack cocaine," or "5 kilograms or more of cocaine hydrochloride, powder cocaine." See Slaughter, 238 F.3d at 583.

8

Pursuant to 21 U.S.C. § 841(b)(1)(A), once a jury has found that a defendant has violated §841(a) involving 50 grams or more of cocaine base, crack cocaine, or 5 kilograms or more of cocaine hydrochloride, powder cocaine, that defendant "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." The prescribed statutory maximum in this case based on the clear findings of the jury is a life sentence which is the sentence imposed upon Odom by this Court.

Accordingly, even if, as Odom asserts, his counsel at sentencing and on appeal failed to raise Apprendi, Odom would not have been entitled to relief. Neither attorney can be deemed ineffective for failing to raise a meritless claim. Thus, Odom's claims based on Apprendi must fail.

Further, any allegation that Odom's attorneys were ineffective for failing to argue Sixth Amendment violations based on Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), must also be dismissed as United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), finding that Blakely applies to the Sentencing Guidelines, had not been decided when Odom was sentenced or while this matter was on appeal.

### C. Sixth Amendment Violation - Application of Booker and Blakely on Collateral Review.

Despite Odom's arguments to the contrary, Booker and Blakely do not apply retroactively to cases on collateral review. The Booker Court determined that its holding would apply to "all cases on direct review." Booker, 125 S. Ct. at 745. As this matter was no longer on direct review in January 2005 when Booker, supra, was decided, Odom's arguments based on Booker and Blakely are foreclosed. See United States v. Gentry, 432 F.3d 600, 601 (5th Cir. 2005).

Further, despite the Booker decision, it is clear that this Court's decision to increase Odom's

sentence based on aggravating factors found by the court does not violate Odom's Sixth Amendment Rights. In United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005), the Fifth Circuit held that judicial fact-finding is permissible. The Mares Court explained that, "[t]he Guideline range should be determined in the same manner as before Booker/Fanfan. Relatedly, Booker contemplates that, with the mandatory use of the Guidelines excised, the Sixth Amendment will not impede a sentencing judge from finding all facts relevant to sentencing." Id. (citing Booker, 125 S. Ct. at 750, 764). It is clear that in sentencing Odom, the court was free to consider aggravating factors without violating Odom's Sixth Amendment rights.

### D. Ineffective Assistance of Appellate Counsel.

As explained above, at the appellate level under Strickland, supra, effective assistance of counsel means counsel who will perform in a reasonably effective manner. Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing Evitts, supra). The petitioner must show that counsel's failure to raise an issue on appeal rendered the entire proceedings — trial and appeal — fundamentally unfair. This is a heavy burden of establishing actual prejudice and not merely that an error had some conceivable effect on the outcome of the proceeding. Givens v. Cockrell, 265 F.3d 306, 310 (5th Cir. 2001).

#### 1. Motion for Acquittal.

Odom asserts that he should have been acquitted on the drug conspiracy charge based on insufficient evidence, and that his appellate counsel was ineffective for failing to so argue. According to Odom, the Government's witnesses presented in support of the drug conspiracy lacked credibility as they were participants in the conspiracy at issue, and were attempting to secure a more favorable sentence by testifying. One of the witnesses, Scottrell Morris, was an abuser of crack

10

cocaine. Odom further asserts that even with the testimony by Odom's former love interests connecting Odom to the money, the Government failed to present evidence that Odom knew the source of the funds. Odom asserts he believed the wire transfers were from legitimate sources.

In reviewing a claim of insufficiency of the evidence, an appellate court considers the evidence in the light most favorable to the Government, and draws all reasonable inferences in support of the jury's verdict. United States v. Powers, 168 F.3d 741, 746 (5th Cir. 1999). The evidence is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Powers, 168 F.3d at 746.

Arguing that the co-conspirators lacked credibility would have been futile as determining the weight and credibility of the evidence is within the sole province of the jury and the appellate courts will not supplant that determination. U.S. v. Kelley 140 F.3d 596, 607 (5th Cir. 1998), citing United States v. Garza, 990 F.2d 171, 173 (1993). The jury is entitled to believe a witness unless the testimony is so incredible that it defies physical laws. Kelley, 140 F.3d at 607. There is no allegation that the testimony of these co-conspirators met this burden. Thus, the jury was entitled to credit their testimony.

Further, the Fifth Circuit has held that "a guilty verdict may be sustained if supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its face." United States v. Bermea, 30 F.3d 1539, 1552 (5th Cir.1994), cert. denied, 514 U.S. 1097, 115 S.Ct. 1825, 131 L.Ed.2d 746 (1995). Odom's co-conspirators testified that Odom was directing and organizing the shipment of drugs via Federal Express. Trial Tr. at pp. 493-515, 588-592, 697-714.

The Government points out that Osborne described obtaining crack from Odom and then sending the money from the sales to Odom. Id. at pp. 700-701, 708, 710-711, 713. Kelly described how Odom packaged the cocaine in detergent boxes. Id. at p. 515. Wilkins testified that she observed Odom cooking and packaging crack cocaine that he would have someone else send to Shreveport. Id. at pp. 158-159. On its face, this testimony is not incredible or insubstantial. Further, this Court gave a cautionary instruction regarding the evaluation of the credibility of an accomplice's testimony which further protects the jury's findings. See Bermea, 30 F.3d at 1552.

To convict a defendant of a drug conspiracy, the Government must prove the existence of an agreement to violate the narcotics laws, the defendant's knowledge of the agreement, and the defendant's voluntary participation in the agreement. Kelley 140 F.3d at 607-608. Odom asserts that the Government failed to prove a conspiracy in this matter and that Odom's appellate counsel was ineffective for failing to argue that denial of the motion for acquittal was improper. Among the factors to be considered by the fact finder to determine whether a defendant is guilty of a drug conspiracy crime are "concert of action," presence among or association with drug conspirators, and "[e]vasive or erratic behavior." United States v. Cardenas, 9 F.3d 1139, 1157 (5th Cir. 1993). Mere presence at the scene of the crime or a close association with a co-conspirator alone cannot establish voluntary participation in a conspiracy. Id. However, presence or association is a factor that, along with other evidence, may be relied upon to find conspiratorial activity by the defendant. Id.

There was ample evidence presented at trial to show that Odom was intimately involved in the drug and money laundering conspiracies. In addition to the co-conspirators' testimony, the Government also presented evidence regarding the wire transfers – a witness who identified and analyzed the Western Union payment records, the records themselves and expert testimony. Wilson,

355 F.3d at 360. Further, the arresting officers testified that Odom tried to escape arrest by driving backwards out of a parking lot until his car was rammed by arresting agents. Id.

The evidence was clearly sufficient to support the drug conspiracy conviction. This Court finds that failing to raise the issue of the denied motion for acquittal on appeal did not fall below an objective standard of reasonableness, and, even if it did, certainly did not cause prejudice as the conviction would not have been overturned.

2. Calculation of Drug Amount Attributable to Odom, and the Use of Firearm and Leadership Enhancements.

Odom asserts that his appellate counsel was ineffective for failing to assert that the district court improperly estimated the amount of drugs attributable to Odom at sentencing. To determine the amount of drugs at sentencing, a district judge can make an estimate and may consider any evidence that has "sufficient indicia of reliability." See U.S.S.G. §2D1.1, comment n.12 (the quantity of drugs can be estimated when no drug seizure occurs or the amount seized does not reflect the scale of the offense); U.S.S.G. §6A1.3, comment.

In the case sub judice, Odom avers that the Court's drug quantity estimate for sentencing was too high because the average profit estimate of $800.00 per ounce of crack cocaine was too low. Agent Sarpy, a Shreveport City Police Officer assigned to the Drug Enforcement Task Force, testified that in 1995 an ounce of crack would cost between $800.00 and $1,200.00. Trial Tr. 416. Rick Adams, a special agent with the Internal Revenue Service, testified that the amount of money laundered was $1,504,123.00. Trial Tr. 1006. To obtain the drug quantity attributable to Odom, the Court used the entire amount of money laundered, $1,504,123.00, and divided that number by $800.00 to arrive at a total of 1,880 ounces of crack cocaine. This amount, roughly equivalent to 52

13

kg of crack cocaine, resulted in a base offense level of 38.

The threshold drug quantity used by the Sentencing Guidelines to reach a base offense level of 38 is 1.5 kg. Thus, even if the Court had used the higher average profit of $1,200.00, the drug quantity attributable to Odom, approximately 32 kg, would still result in a base offense level of 38.

When examined in conjunction with the obstruction of justice[3] and firearm enhancements, as discussed below, even if appellate counsel was deficient in failing to raise the issue of drug quantity calculation on appeal, which this Court finds he was not, Odom cannot show prejudice. The base offense level for drug quantity would remain at 38 regardless of which profit average the Court used.

Odom also asserts that his appellate counsel was ineffective for failing to raise the firearm enhancement issue on appeal. Paragraphs 26-29 of the presentence investigation report described the two-point assessment under U.S.S.G. §2D1.1(b)(1) for possession of a dangerous weapon in relation to drug-related activities as follows:

> On at least two occasions, a firearm was used by the defendant in connection with the offenses. Trial testimony of Rochelle Abercrombie revealed the defendant put a gun in her mouth sometime during the conspiracy and ordered her to keep working for him.
>
> Also, in December of 1994, the defendant was at James McDade's girlfriend's home in Shreveport, Louisiana. The defendant was at this home conducting drug-related activity. Rival drug dealers tried to rob the defendant of his money. The defendant had a semi-automatic pistol in his possession. The defendant shot a minor child during a struggle to protect himself from being robbed. The defendant fled the scene. The defendant later told Wayne Kelly to go back to the home and to get the money he had hid. The defendant ordered Kelly to go back to the house or he would kill him.

---

[3]Odom makes no assertions with regard to application of the two-point obstruction of justice enhancement.

> Finally, Scottrell Morris testified during trial the defendant had showed him a gun during a meeting held at the Pete Harris Café in Shreveport, Louisiana, sometime during the conspiracy. The defendant told Morris he could not leave the drug trade and brandished a firearm towards Morris.

As this Court found at sentencing, the evidence adduced at trial and at the sentencing hearing convinces this Court, and would convince any court, that Odom routinely possessed a dangerous weapon, all in relation to his drug-related activities.

Questioning this Court's application of the two-point firearm enhancement would be frivolous based on the abundance of evidence supporting this Court's findings that the firearm enhancement was justified. Odom's appellate counsel was not deficient.

With a base offense level of 38, and a two-point obstruction of justice enhancement and a two-point firearm enhancement, Odom's offense level is increased to 42. At a level of 42, the Sentencing Guideline range would have been 360 months to life. This Court need not address Odom's ineffective assistance of appellate counsel claim based on counsel's failure to raise the leadership enhancement issue on appeal as the Court did not need the four-point enhancement to issue a life sentence for Odom's actions. In other words, even if appellate counsel was deficient for failing to raise the leadership enhancement issue, which this Court finds he was not, Odom could not prove prejudice.

## **CONCLUSION**

For the reasons stated above, Odom has failed to meet his burden of proof under <u>Strickland</u>.

Odom's motion is therefore **DENIED**, and his claims must be **DISMISSED**.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE