**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

**UNITED STATES OF AMERICA**  **CASE NO.  5:00-CR-50050-01**

**VERSUS**  **JUDGE ROBERT G. JAMES**

**CALVIN ODOM,**
**AKA BUTCH WILSON (01)**

**RULING**

Before the Court is a Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act ("FSA"), filed by Defendant Calvin Odom, whereby Defendant moves the Court to reduce his term of incarceration to time served [Doc. No. 688 at 6]. The government opposes the motion, arguing Odom is not eligible for relief under the FSA. [Doc. No. 689 at 1]. Alternatively, in the event the Court finds Odom is eligible for relief, the government contends the Court should exercise its discretion and deny relief. *Id.* at 7. For the reasons set forth below, Defendant's motion is GRANTED AS MODIFIED: the Court will reduce Defendant's term of incarceration to 360 months.

**I.**
**BACKGROUND**

On June 29, 2000, Odom and nine others were charged in a four count indictment, alleging narcotics and money laundering offenses. [Doc. No. 5]. Specifically, Odom was charged with "Conspiracy to Possess with Intent to Distribute Cocaine Base (Crack Cocaine)" (Count 1), Conspiracy to Commit Money Laundering (Count 3), and two Forfeiture Counts (Counts 2 and 4). *Id.* As to Count 1, the government alleged that from approximately October 31, 1993 until September 30, 1997, Odom and his co-defendants conspired "to possess with intent to distribute . . . fifty (50) grams or more of cocaine base, (crack cocaine), and five (5) kilograms or more of

cocaine hydrochloride (powder cocaine), Schedule II controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1) & 846."[1] *Id.* at 2. On March 8, 2002, Odom proceeded to trial. As summarized by the Fifth Circuit:

> The facts established at trial are as follows. Odom was the head of an organization that distributed cocaine from Los Angeles, California, where he resided, to Shreveport, Louisiana. Packages of cocaine were sent from Los Angeles to Shreveport by car or in Federal Express packages. In Shreveport, Odom's half-brother, James McDade ("McDade"), either sold the cocaine or used other dealers to sell the cocaine. Wayne Kelly ("Kelly") and Andre Osborne ("Osborne"), who both pleaded guilty prior to testifying at trial, were sent to Shreveport by Odom to assist in distributing the cocaine and laundering the profits generated. Odom occasionally traveled to Shreveport to monitor the business.
>
> The money was usually sent back to California through Western Union in the name of fictitious senders. The cash was retrieved by five women in California at thirty different locations. The money was sent from approximately twelve different Western Union locations in the Shreveport area. The women who picked up the money were all involved in romantic relationships with Odom. They testified at trial they retrieved the money at his request and gave it to him. They also testified they were abused by Odom.
>
> At trial, most of the testimony was by Odom's co-conspirators. However, the evidence regarding the wire transfers included a witness who identified and analyzed the Western Union payment records, the records themselves, and expert testimony. Additionally, the arresting officers testified that Odom tried to escape arrest by driving backwards out of the parking lot until his car was rammed by the arresting agents.

*United States v. Wilson*, 355 F.3d 358, 360 (5th Cir.2003). Following a five day jury trial, Odom was convicted on Counts 1 and 3.[2] [Doc. No. 420].

On July 11, 2002, the Court held a sentencing hearing. [Doc. No. 452]. As set forth in the Presentence Investigation Report ("PSR"), the Probation Officer determined the amount of narcotics involved in the offense by converting the proceeds of the drug sales, as evidenced by the

---

[1] Thus, while the caption of the indictment solely identifies cocaine base as the narcotic involved, the body of the charge alleged the conspiracy dealt in both cocaine base and powder cocaine.

[2] By agreement of counsel, the forfeiture counts were decided by the Court. [Doc. No. 515 at 2, n.1].

wire transfers, into an estimated amount of narcotics. Specifically, the evidence at trial showed Odom's co-defendants made at least 470 wire transfers, totaling $1,504,423.00, during the course of the conspiracy. [PSR at 6, ¶ 19]. Although the indictment alleged the conspiracy involved the distribution of both cocaine base and powder cocaine, the Probation Officer noted "the vast majority of the proceeds was [sic] from crack cocaine sales." *Id.* at ¶ 20. The PSR concluded that "[u]sing a conservative estimate of $800 per ounce of crack cocaine, a total of 1,880 ounces of crack cocaine was distributed and the defendant is held responsible for this amount." *Id.* The PSR found Odom's two counts of conviction involved substantially the same harm and therefore grouped them together to determine a single offense level. *Id.* at ¶ 24. Using the guideline producing the highest offense level (conspiracy to distribute cocaine base) Odom's base offense level was 38. *Id.* at ¶ 25 (citing USSG 2D1.1(c)(1)). Two points were added for Odom's possession of firearms in relation to his drug activities, four points were added for his role in the offense, and two points were added for obstruction of justice, making Odom's total offense level 46. *Id.* at ¶¶ 26-37, 65.

Odom's statutory sentencing range was ten years to life. *Id.* at 12, ¶ 64. Odom's total offense level of 46, coupled with his criminal history category of II, resulted in a guideline imprisonment range of life. *Id.* at ¶¶ 44, 65. The Court adopted the PSR without change and sentenced Odom under the then-mandatory sentencing guidelines to life in prison, to be followed by five years supervised release on Count 1 and three years on Count 3, with the terms of supervised release to run concurrently. [Doc. No. 452; *see also* Doc. No. 471 & Statement of Reasons]. On December 22, 2003, the Fifth Circuit affirmed Odom's conviction. *Wilson*, *supra*.

## II.
### APPLICABLE LAW

At the time Odom was sentenced, conspiracy to distribute 50 grams or more of crack cocaine carried a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A) (West 2002). On August 3, 2010, after more than two decades of substantial criticism from the Sentencing Commission and others in the law enforcement community that the harsh treatment of crack cocaine offenses was fundamentally unfair when compared to offenses involving powder cocaine, Congress passed the Fair Sentencing Act. *Dorsey v. United States*, 567 U.S. 260, 268 (2012). Section 2 of the Fair Sentencing Act increased the quantity of crack cocaine required to trigger the ten-year mandatory minimum sentence from 50 grams to 280 grams, and increased the quantity of cocaine base required to trigger the five-year mandatory minimum sentence from 5 grams to 28 grams. *Id.* at 269. The Fair Sentencing Act took effect on August 3, 2010 but applied only to sentences imposed thereafter. *Id.* at 264.

In 2018, Congress passed the First Step Act, which made the revised crack cocaine minimums established by the Fair Sentencing Act retroactive. First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, § 404, 132 Stat 5194 (2018). The First Step Act provides in relevant part:

>   (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010.
>
>   (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed.
>
>   (c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced

> in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 . . . or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.*

## III.
### ANALYSIS

### A.   Whether Defendant is eligible for relief under the First Step Act

The government makes two arguments in support of its position that Odom is ineligible for relief as a matter of law: (1) Odom's "powder cocaine conviction independently disqualifies him for relief under the First Step Act," and (2) Odom is ineligible for relief due to "the total crack quantity attributed to him in the sentencing record." [Doc. No. 689 at 10, 13]. With regard to its first assertion, the government argues in pertinent part:

> The defendant's statutes of conviction were not "covered offenses" because his indictment charged a quantity of powder cocaine that independently triggered his statutory penalty. . . .
>
> The defendant's statutes of conviction were 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(A), which carried a single base penalty of 10 years to life imprisonment. 21 U.S.C. § 841(a), (b)(1)(A); Rec. Doc. 5. The defendant met two separate drug quantity thresholds that subjected him to this penalty—50 grams or more of crack and 5 kilograms or more of powder cocaine. 21 U.S.C. § 841(a), (b)(1)(a); Rec. Doc. 5. The jury found the defendant guilty of Count One, and therefore convicted him of both the crack and powder offenses. Section 2 of the Fair Sentencing Act only modified one of these drug quantity thresholds—the 50 grams or more of crack. § 2, 124 Stat. 2372. Therefore, the defendant' [sic] statutory penalty remains the same as it was at the time he was originally sentenced because Section 2 of the Fair Sentencing Act did not modify the powder cocaine quantity that independently qualified him for the penalty. See § 2, 124 Stat. 2372; 21 U.S.C. § 841(a), (b)(1)(a); Rec. Doc. 5.

[Doc. No. 689 at 10-11].

The government is correct that Count 1 of the Indictment, denominated as "Conspiracy to Possess with Intent to Distribute Cocaine Base (Crack Cocaine)," charged Odom and his co-defendants with violating 21 U.S.C. §§ 841(a)(1) and 846 by conspiring to distribute "fifty (50) grams or more of cocaine base, (crack cocaine), **and** five (5) kilograms or more of cocaine hydrochloride (powder cocaine)." [Doc. No. 5 at 2 (emphasis added)]. However, at trial the jury was instructed as follows:

> Count One (1) of the indictment accuses the Defendant of committing the crime of conspiracy to possess with the intent to distribute cocaine in two different ways. The first is that the Defendant conspired to possess with the intent to distribute fifty (50) grams or more of cocaine base (crack cocaine). The second is that the Defendant conspired to possess with the intent to distribute five (5) kilograms or more of cocaine hydrochloride (powder cocaine).
>
> The Government does not have to prove both of these for you to return a guilty verdict on this charge. Proof beyond a reasonable doubt on one or the other is enough. But in order to return a guilty verdict, all twelve of you must agree that the same one has been proved. All of you must agree that the Government proved beyond a reasonable doubt that the Defendant conspired to possess with the intent to distribute fifty (50) grams or more of cocaine base (crack cocaine); **or** all of you must agree that the Government proved beyond a reasonable doubt that the Defendant conspired to possess with the intent to distribute five (5) kilograms or more of cocaine hydrochloride (powder cocaine).

[Doc. No. 418 at 6-7 (emphasis added); *see also Id.* at 13; Doc. No. 470-4 at 6-7, 85-86, 94; Doc. No. 515 at 8].

The Verdict form shows only that the jury found Odom guilty of Count 1. [Doc. No. 420]. There is no indication as to whether the jury found Odom guilty of conspiracy to distribute fifty grams or more of cocaine base, guilty of conspiracy to distribute five kilograms or more of powder cocaine, or guilty of both. And again, the PSR, which was adopted by the Court at sentencing, finds "the vast majority of the proceeds was [sic] from crack cocaine sales"; it converts the money evidenced by the wire transfers into a comparable amount of cocaine base; and it calculates Odom's base offense level using the offense level corresponding to the estimated amount of

cocaine base. PSR at ¶¶ 20, 25. Thus, the Court finds the government's conclusion – that the jury "therefore convicted [Odom] of both the crack and powder offenses" [Doc. No. 689 at 10] – is not the only conclusion that can be drawn from the underlying record, as it is entirely possible the jury found Odom guilty of only the crack cocaine offense.

> As the undersigned has previously ruled:
>
> [T]he Court finds the language of the First Step Act, on its face, does not limit eligibility to defendants whose convictions solely involved cocaine base. *See* FIRST STEP ACT OF 2018, PL 115-391, December 21, 2018, 132 Stat 5194, Sec. 404(a) ("the term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010"). As discussed by the Fifth Circuit, "[W]hether a defendant has a 'covered offense' under section 404(a) depends only on the statute under which he was convicted. If he was convicted of violating a statute whose penalties were modified by the Fair Sentencing Act, then he meets that aspect of a 'covered offense.'" *United States v. Jackson*, 945 F.3d 315, 320 (5th Cir.2019).

*United States v. Jonathan Winters*, Case No. 6:09-CR-64-001, ECF No. 588 at 4-5 (Feb. 4, 2020); *see also United States v. Smith*, 5:01-50070-02, 2020 WL 497129, at *3 (W.D. La. Jan. 30, 2020). In this matter, Odom was convicted of conspiring to commit a violation of 21 U.S.C. § 841(a)(1), and the statutory penalty for one aim of that conspiracy (distribution of cocaine base) has been "modified by section 2 . . . of the Fair Sentencing Act of 2010." The government could have charged (and perhaps convicted) Odom with two counts of violating 21 U.S.C. § 841 – i.e., one count of conspiring to distribute powder cocaine and one count of conspiring to distribute cocaine base – but it did not. As noted by one court:

> The availability of First Step Act relief cannot be so fickle: it cannot turn on how the government charged a case or drafted an indictment. Denying [the defendant] relief under the First Step Act because the government charged a single count of violating 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 instead of two would allow the U.S. Attorney's Office–rather than Congress–to define what is a "covered offense" under the First Step Act.

*United States v. Luna*, -- F.Supp.3d --, 3:05-CR-58 (SRU), 2020 WL 464778, at *2 (D. Conn. Jan. 29, 2020). For these reasons, the Court finds Odom is not ineligible for relief based upon the manner in which he was charged in the Indictment.

As to the government's second argument – that Odom is ineligible for relief due to the amount of cocaine base attributed to him in the sentencing record – the government acknowledges its position "was rejected by the Fifth Circuit, but makes it to preserve it for future proceedings in this case." [Doc. No. 689 at 13 (citing *Jackson*, *supra*]. The Court agrees with the government that this argument is now foreclosed by the Fifth Circuit. *Jackson*, 945 F.3d at 320. Accordingly, the Court finds Odom meets all requirements for eligibility under section 404 of the FSA: Odom was convicted of violating a statute whose penalties were modified by Section 2 of the Fair Sentencing Act, his violation occurred before August 3, 2010, and he has not filed a previous motion seeking First Step Act relief, nor was his sentence "previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act." Therefore, the Court finds Odom is eligible for relief under the First Step Act.

### B. Whether Relief is Warranted

In determining the appropriate sentence, the Court has considered the statutory range, the applicable sentencing guideline range, the sentencing factors set forth in 18 U.S.C. § 3553(a), and pre- and post-sentencing conduct. *See e.g. Jackson* at 321-22; *United States v. Williams*, 943 F.3d 841, 843-44 (8th Cir. 2019) (citing *Pepper v. U.S.*, 562 U.S. 476, 504 (2011)).[3] Odom was originally subject to a statutory sentencing range of ten years to life in prison. Under the First Step

---

[3] *See also* United States Sentencing Commission, Office of Education and Sentencing Practice, *FIRST STEP ACT*, p. 7, https://www.ussc.gov/sites/default/files/pdf/training/newsletters/2019-special_FIRST-STEP-Act.pdf (last visited March 9, 2020) ("[T]he courts should consider the guidelines and policy statements, along with the other 3553(a) factors, during the resentencing.").

Act, his statutory sentencing range is now five to forty years incarceration. Odom's sentencing guideline range remains life in prison.[4]

Counsel for Odom argues his "exemplary conduct" while in the custody of the Bureau of Prisons ("BOP") warrants a reduced sentence, noting in over seventeen years of incarceration, Odom has received only one disciplinary infraction. [Doc. No. 688 at 4]. Counsel points to the letters submitted on Odom's behalf as evidence of "an extensive and loving support network ready to receive and support him transition out from his life behind bars." *Id.* at 5. Counsel additionally points to Odom's "lack of significant criminal history" and his lack of any prior periods of incarceration, noting, "Therefore, Odom's first real prison sentence–for a drug distribution offense not resulting in death–ended up being for life." *Id.* (internal citations omitted). In light of these arguments, counsel asks that Odom's sentence be reduced to time served in order that he may "reenter society and prove that he is the person he has shown over the past 17 plus years that he can be." *Id.*

The government responds that Odom's history, characteristics, and the nature of his offense militate against granting relief. [Doc. No. 689 at 7]. The government notes Odom had "multiple convictions for the illegal possession of firearms prior to the instant offense," and it points to the trial testimony of several witnesses regarding Odom's "violent nature and his practice of using firearms to intimidate the women and men who trafficked his drugs and laundered his money." *Id.* at 7-8. At least five witnesses at trial testified Odom either committed acts of violence against them or threatened them (sometimes with a firearm) when they tried to leave the conspiracy or refused to execute Odom's orders. *Id.* at 7-8. The government notes the conspiracy involved a "conservative estimate of over 50 kilograms of crack" (*i.e.*, an amount far in excess of the "280

---

[4] Were the Court conducting a plenary resentencing, Odom's guideline range would be forty years in prison.

gram crack threshold established by the Fair Sentencing Act") and points to the sophistication of the money laundering scheme, concluding "defendant is not the kind of low-level, non-violent drug offender that Congress had in mind when it passed the First Step Act." *Id.* at 9. Finally, the government notes Odom's guideline range has not changed, and argues if he were sentenced today, he would be unable "to identify any grounds for the extraordinary relief he is requesting." *Id.* at 10.

The Court agrees with the government that the criminal organization Odom led appears to have distributed vast amounts of narcotics in the Shreveport area. It also agrees Odom committed acts of violence against several of his girlfriends when they expressed to him that they no longer wished to engage in criminal activity on his behalf, and Odom threatened his male co-conspirators when they attempted to leave the conspiracy or did not do what he asked of them.[5] However, the Court also agrees with defense counsel that Odom's underlying criminal history is not particularly significant.[6] Odom is now almost 58 years old. He has been incarcerated for this offense for over nineteen years. He works as an orderly in a medium security facility and has "consistently earned average or above average work evaluations." [Doc. No. 682-1 at 1] He has taken many educational and vocational courses while in BOP custody in furtherance of his rehabilitation. *Id.* at 1-2. As noted, he has only one disciplinary event while in BOP custody, which occurred in 2015 for being absent from assignment. *Id.* at 2.

After consideration of the § 3553(a) factors, including the history and characteristics of this Defendant, the need to afford adequate deterrence to criminal conduct and to promote respect

---

[5] *See* PSR at 7, ¶¶ 26-28, 32; *see also* record citations provided by the government at Doc. No. 689 at 7-8.

[6] Odom has two convictions for carrying a concealed weapon in a vehicle without a license, occurring in 1988 when he was twenty-six years old. These convictions appear to be misdemeanor offenses. *See* Cal. Penal Code § 25400.

for the law, the parties' arguments, and Congress's intent in passage of the First Step Act, the Court determines that a reduction of Defendant's sentence of imprisonment to 360 months is sufficient but not greater than necessary to comply with the purposes of sentencing. Such a sentence is a substantial prison term, commensurate with the crimes Odom committed. In this Court's opinion, a greater sentence is not necessary to prevent unwarranted departures when compared with similar sentences in this era.[7] Accordingly,

IT IS HEREBY ORDERED that the Motion for Sentence Reduction Pursuant to Section 404 of the First Step Act [Doc. No. 688] is GRANTED, and the Court will issue an amended judgment reducing Defendant's term of incarceration to 360 months. Except as modified in this paragraph, all other provisions of the Judgment imposed on July 11, 2002 [Doc. No. 452] REMAIN in effect.

IT IS FURTHER ORDERED that the motion for sentence reduction pursuant to Amendment 782 of the United States Sentencing Guidelines [Doc. No. 658] is DENIED. As set forth above, Defendant's guideline calculation has not changed.

SIGNED this 17th day of April, 2020.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

---

[7] The Court notes in Odom's pro se brief filed before counsel was appointed to represent him, Odom additionally asks that his term of supervised release be reduced from five to four years. [Doc. No. 682 at 22]. The Court declines to reduce the term of supervised release at this time. However, should Odom's supervision remain in this district and should he be compliant with the terms of supervision, the Court will entertain a motion for early termination of supervised release once Odom approaches four (4) successful years of supervision.