# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 00-50050 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| BUTCH WILSON a/k/a CALVIN ODOM | |

## MEMORANDUM RULING

Before the Court is a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), filed by Defendant Butch Wilson, also known as Calvin Odom ("Odom"). Record Document 701. Odom contends that his high blood pressure, diabetes, and high cholesterol put him at serious risk of health complications due to COVID-19, and therefore constitute an extraordinary and compelling circumstance justifying a reduction of sentence. The Government opposes Odom's motion and contends he is not entitled to any relief. Record Document 703. For the following reasons, Odom's motion [Record Document 701] is **DENIED**.

## Background

On June 29, 2000, Odom and nine others were charged in a four-count indictment alleging narcotics and money laundering offenses. Odom was charged with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i), (a)(1)(B)(ii), and (h) (Count Three); and two counts of forfeiture pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982 (Counts Two and

Four). Record Document 5. At trial, it was established that Odom was the head of an organization distributing drugs from Los Angeles, California to Shreveport, Louisiana. On March 8, 2002, a jury found Odom guilty of Counts One and Three. Record Document 420.

Pursuant to the then-mandatory Sentencing Guidelines, Odom was sentence to life imprisonment. Record Document 451. Odom was also sentenced to five years of supervised release as to Count One and three years of supervised release as to Count Three, to run concurrently—provisions that became applicable only if Odom was released from imprisonment. *Id.* Odom appealed to the United States Court of Appeals for the Fifth Circuit, but did not raise any challenges to his sentence. The Fifth Circuit affirmed Odom's conviction. *United States v. Odom*, 355 F.3d 358, 360 (5th Cir. 2003). On April 17, 2020, pursuant to Section 404 of the First Step Act, the Court reduced Odom's sentence to a total of 360 months imprisonment and five years of supervised release. Record Documents 690 & 691.

In the instant motion, Odom argues that his medical conditions, which put him at increased risk of COVID-19 and resulting complications, constitute an extraordinary and compelling circumstance justifying a reduction of sentence. Record Document 701. Odom suffers from high blood pressure, diabetes, and high cholesterol. *Id.* at 10. To support his claim, he submits documentation of his conditions and prescribed medications. Record Document 701-2. He also submits a memorandum from the Attorney General to the Director of the BOP regarding the prioritization of home confinement as an appropriate option amidst the COVID-19 pandemic. Record

2

Document 701-4. Finally, he submits letters of support from friends and family. Record Document 701-3.

## Law & Analysis

### I. Exhaustion of Remedies

Historically, only the Director of the Bureau of Prisons ("BOP") could file a motion to reduce an inmate's sentence. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239. After the First Step Act of 2018, however, a court may consider compassionate release motions directly from prisoners. 18 U.S.C. § 3852(c)(1)(A). But before a prisoner pursues compassionate release through a district court, he must first exhaust all administrative remedies or wait for a lapse of thirty days from the time he files his request with the warden. *Id.*

Odom has satisfied this claim processing requirement. The Court denied a previous compassionate release motion filed by Odom because he failed to exhaust his administrative remedies. Record Document 700. But attached to his renewed motion for compassionate release is a letter to prison officials dated February 9, 2021. Record Document 701-1. In this letter, Odom specifically requests release to home confinement pursuant to 18 U.S.C. § 3624(c) and/or compassionate release under 18 U.S.C. § 3852. *Id.* In a response email with the same date, the BOP system notified Odom that his "request ha[d] been forwarded to the appropriate department for review and consideration." *Id.* Approximately three months later, Odom filed his motion for compassionate release. Odom thus waited the necessary thirty days after his request to the warden and, as a result, the Court may properly consider his motion.

## II.   Extraordinary and Compelling Circumstances

While a court generally "may not modify a term of imprisonment once it has been imposed," there are several exceptions. 18 U.S.C. § 3582(c). One exception allows a court to reduce an inmate's sentence when the inmate provides "extraordinary and compelling reasons" to justify a sentence reduction.[1] 18 U.S.C. § 3582(c)(1)(A)(i). The inmate bears the burden of showing why a reduction is justified. *See United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020).

To assist in determining what constitutes an extraordinary or compelling reason, the Sentencing Commission provides a blueprint that elucidates circumstances that may justify reducing a prison term. Prior to November 1, 2023, the Guidelines outlined the following four categories for district courts to consider: (1) defendant's medical condition; (2) defendant's age; (3) family circumstances; or (4) other reasons. 16 U.S.S.G. § 1B1.13 cmt. 1 (2021). The Fifth Circuit previously held that those four categories were not binding; they served as a guide to help courts analyze whether they should grant a sentence reduction. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

The Sentencing Commission amended the Sentencing Guidelines effective November 1, 2023. For the first time since the First Step Act was passed, the Commission outlined specific reasons that would be considered "extraordinary and

---

[1] To the extent Odom requests the Court grant him relief by ordering he be moved to home confinement, the Court does not have the authority to do so. *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737, 741 (5th Cir. 2020). "[R]elease to home confinement is a discretionary decision left to the Attorney General and the BOP" and courts cannot review the failure to release an inmate to home confinement. *Id.*

4

compelling" under 18 U.S.C. § 3582(c)(1)(A)(i). The six categories outlined in the sentencing guidelines are: (1) defendant's medical condition; (2) defendant's age; (3) family circumstances; (4) whether defendant has been a victim of abuse during custody; (5) other reasons; and (6) an extraordinarily long sentence. U.S.S.G. § 1B1.13(b).[2]

Prior to the 2023 Sentencing Guideline amendments, district courts evaluating claims for compassionate release based on COVID-19 were left to engage in a highly fact-intensive, totality of the circumstances analysis. *See, e.g.*, *United States v. Wright*, No. 16-214-04, 2020 WL 1976828, at *5 (W.D. La. Apr. 24, 2020) ("A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant."). But even then, it was clear to district courts that the spread of COVID-19 and the conditions of confinement in jail, alone, were not sufficient grounds to justify a finding of extraordinary and compelling circumstances. *See Thompson*, 984 F.3d at 435 ("Fear of COVID doesn't automatically entitle a prisoner to release."). As the Fifth Circuit explained, district courts had broad discretion in evaluating COVID-19 compassionate release claims, even where a petitioner established a severe health condition that put them at serious risk of complications from COVID-19. *See id.* at 434-35. It also noted that when courts did grant compassionate release based on risk of

---

[2] This Court understands that the revised Sentencing Guidelines apply to this motion. *See United States v. Jean*, 108 F.4th 275, 279 (5th Cir. 2024) (petition for rehearing en banc filed Sept. 18, 2024). But regardless of whether the previous or amended Guidelines are applicable, the Court would come to the same conclusion and deny relief. *See infra* n.5.

5

COVID-19 complications, they "largely [did] so for defendants who had already served the lion's share of their sentences and presented multiple, severe health concerns." *Id.*

In the revised Guidelines effective November 1, 2023, the Sentencing Commission incorporated factors courts considered during the COVID-19 pandemic to assess whether a prisoner presented extraordinary and compelling circumstances. The Guidelines now state that extraordinary and compelling circumstances exist based on the prisoner's medical condition(s) if:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
> 
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
> 
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).[3]

Odom is not housed in a correctional facility currently at risk of an infectious disease outbreak and/or ongoing public health emergency. While Odom's motion focuses on the risk of contracting (or having) COVID-19 at USP Lompoc, he is no longer housed there. Odom now resides in a residential reentry program, making any concerns he had about exposure to the conditions at USP Lompoc moot. But even if Odom still

---

[3] The Guidelines also provide for other medical circumstances that may constitute extraordinary and compelling circumstances including a terminal illness, serious physical or medical condition, or condition that requires long-term or specialized medical care—none of which are applicable here. *See* U.S.S.G. § 1B1.13(b)(1). Odom's only claim is that his medical conditions put him at increased risk of contracting, and suffering complications from, COVID-19.

6

resided at USP Lompoc, the facility is not at risk of an infectious disease outbreak nor public health emergency. As of October 9, 2024, there was just one open case of COVID-19 at USP Lompoc.[4] The COVID-19 public health emergency expired in May 2023. Press Release, HHS Secretary Xavier Becerra, Secretary, Dep't Health & Hum. Servs., Statement on End of the COVID-19 Public Health Emergency, (May 11, 2023).

Further, while the Court notes Odom does suffer from high blood pressure, diabetes, and high cholesterol, which may pose some risk of complications from COVID-19, these diagnoses themselves are insufficient to show that extraordinary and compelling medical circumstances exist such that relief is justified. Odom provides no evidence that his medical conditions put him at risk based on the conditions at his current facility, nor that any risk could not be mitigated by the BOP. Since the revised Guidelines became effective, other district courts in this circuit have denied compassionate release to defendants with similar medical conditions seeking relief based on the risks associated with COVID-19. *See, e.g.*, *United States v. Taylor*, No. 17-09-01, 2024 WL 150221, at *3 (E.D. Tex. Jan. 11, 2024) (denying compassionate release to a petitioner with diabetes, hyperlipidemia, obesity, enlarged prostate, GERD, lower back pain, depression, and hypothyroidism based on the revised Guidelines); *United States v. Bates*, No. 13-66, 2024 WL 3274986, at *3 (E.D. La. July 2, 2024) (denying compassionate release to a petitioner with hypertension, obesity, chronic kidney disease, major depressive disorder, and panic disorder based on the revised

---

[4] *See* Inmate COVID-19 Data, BOP, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp#lastestCovidData. Data provided by the BOP combines statistics for inmates at both FCI Lompoc I and FCI Lompoc II, which are housed in the same correctional complex.

7

Guidelines). Odom fails to establish that he is subject to an extraordinary and compelling circumstance justifying a reduction of sentence.[5]

## Conclusion

For the reasons assigned herein, Odom's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [Record Document 701] is hereby **DENIED**.

**THUS DONE AND SIGNED** this 18th day of November, 2024.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[5] The Court cannot consider any evidence of rehabilitation established by Odom's letters of support in its analysis. Rehabilitation can only be considered "in combination with other circumstances." U.S.S.G. § 1B1.13(d). "[R]ehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." *Id.* (pursuant to 28 U.S.C. § 994(t)). Because Odom does not have any other circumstances that could qualify as extraordinary and compelling, the Court does not consider his rehabilitation.